Thank you, Your Honor. Good morning. For the record, I'm Ralph Cromwell. I'm one of the lawyers for the appellant Perkins Coie. If possible, I would like to reserve three minutes for rebuttal. This appeal concerns whether arbitration should have been compelled under the doctrine of equitable estoppel under certain circumstances. Equitable estoppel lets a non-signatory to a contract containing an arbitration clause use the contract to compel arbitration. One of those circumstances is where a signatory to a contract containing an arbitration clause uses the contract in making a claim against a non-signatory. And the rationale in that circumstance is, okay, if the contract containing the arbitration clause is going to be used as a sword against the non-signatory, then it's not unfair to let the non-signatory turn around and use the terms of the contract in defending himself. Counsel, I'm sorry. I was just going to say, we are just really right in sync, I guess. Perkins was essentially an escrow in this. Yes. Token purchase sale. So suppose that as the escrow agent, you received a sworn affidavit stating that all conditions of the contract have been met, so the money should be released, or whatever it is you Even if that turns out not to be true, wouldn't you be able to release the money without going into whether it was true? In other words, I guess I just have trouble seeing how the whole escrow arrangement is intertwined with the contract sufficiently to get you there. Okay. So I agree the legal standard is, is it intertwined with the token purchase agreement, and to find out whether the claim alleges it is intertwined, we would say you look at the contract, a short, plain statement of the claim. When you look at the contract, what it says repeatedly is that the escrow arrangement was incorporated by reference into the token purchase agreement. It says that in paragraph... Is that true of the amended complaint? The new complaint? Right. The new complaint goes through our briefing in this court and takes out every allegation. That wasn't my question. Does the new complaint contain that allegation that you're relying on? Not explicitly. Okay, counsel. Supposing, at this oral argument, counsel stipulates on the record that they're any claim that might arise in any fashion out of the token purchase agreements, implicit, explicit, whatever, what would your position be then? That if we were entitled to... We demanded arbitration two years ago. If we were entitled to arbitration based upon the allegations in effect when we made the demand, then under section 9 U.S.C. section 4, under section 4 of the Federal Arbitration Act, what should have happened is all of the proceedings in the trial court should have been stayed. So our position is that anything that happens during appeal cannot alter whether we were or weren't entitled to arbitration at the time we made the demand based upon the allegations then in effect. Isn't that what the mootness doctrine does? Well, you know, the mootness doctrine, you know, is there a live controversy? Yes, there's a live controversy we're here arguing. Can you grant effective relief? I would say yes, you can grant effective relief. You can rule that arbitration should have been compelled at the time... But if that complaint no longer exists, there's nothing to arbitrate. In other words, the plaintiff is master of the complaint, and a plaintiff can bring completely non-arbitrable claims if they want to. They don't have to bring claims that are subject to arbitration. They can decide that that's something they don't want to do, even if they might have such claims in theory. So if the current complaint does not depend on the contract that contains the arbitration clause, why isn't the entire proceeding as it reaches us moot, the appeal? If you dismiss this appeal as moot, we will demand arbitration again based on the new complaint because it's the same facts, it's the same escrow. But it's not the same facts and it's not the same theory. But that isn't before us, though. The only thing that's before us is whether the existing appeal is moot. And, counsel, go back to my question. If, hypothetically, your opposing counsel agrees that there would be no possible way they can use the token purchase agreement in any fashion, doesn't that answer your hypothetical? If we had a right to arbitration based upon the allegations that were in effect when we demanded arbitration, did we were entitled to arbitrate those claims? No, no. You're not answering my question. Then I'm not understanding it. Okay. My question is if you go back to the district court with that new complaint and holding in your hand a transcript in which opposing counsel says, no, we won't touch that token purchase agreement in any fashion, we won't claim that anything arises out of it, we won't claim that there's anything implicit about it, we won't use it, period, then aren't you in a different position? I don't think so. The way I read the Britain case is that the trial court cannot alter the merits of the issue on appeal during the appeal. Okay. Well, you're escaping the question. You're evading it, and that's fine. You're entitled to do that. But the premise of the questions that we've been asking is that the court had the right to allow the amended complaint to be filed, and it supersedes the original complaint. So I don't know if you still want to answer it or not, but if the new complaint supersedes the old one, as I think we have to assume for the sake of where we are, then what is the answer to Judge Wallach's question? And my premise is that you're going to stand in front of us and say, oh, no, they have this new complaint, but they sneakily will still try to use the TPA. And so I'm asking you, if they promise we won't do anything like that, then where are you? I'm sorry. I'm not trying to evade your question, but maybe I'm not getting it. The first thing I would say is I don't think the trial court was entitled to allow an amended case. Well, then consider it a hypothetical question. But whether it's hypothetical or not, the question is, based on the amended complaint alone, based on the amended complaint alone, what is the answer to Judge Wallach's question, whether you agree that they did or didn't have the authority to do it? I think the place I'm getting stuck is I think the amended complaint relies on the token purchase agreement, and you're saying, oh, okay, but I've got a transcript. In which they say, no, we won't rely on the token purchase agreement in any fashion, so that you get to say to the district court judge, hey, wait a minute, they're referencing the token purchase agreement here, and if they can't, they're out of court. So if they can't rely on the token purchase agreement in any fashion, I think then I'm probably not in a good position on the test of, is the claim intertwined with the token purchase agreement? And what I would be left with is our alternate argument based on agency, that our conduct as escrow agent was as an agent to the signatories to the contract. We allegedly were performing duties that were a part of the contract. The escrow was supposed to be a part of the contract, and if we are being sued for our conduct as an agent or an employee of the signatories to the contract, on a part of the contract, then we likewise are entitled to. To whom do your obligations lie as an escrow agent? You would be an agent typically of both signatories. Right, okay. Well, you answered my question. It is my understanding of how it works. Putting aside just briefly for a minute the mootness issue, it seems to me that at the time we demanded arbitration, it should have been granted. Whether you say the test is intertwined or it relies on or it arises from, is it somehow closely connected with the contract containing the arbitration clause? I don't see how you can reach the conclusion that the complaint doesn't make that allegation. That's not enough. I mean, normally the cases in which equitable estoppel has been applied, it's where the signatory party is trying to basically capture the benefits of the contract but avoiding the burdens, right? And here it doesn't seem as though they're trying to capture the benefits. They're actually saying that the token purchase agreement is what gives rise to the estate's liability, right? I would say that they're trying to use the token purchase agreement against Perkins to recover $10.8 million. They're saying, Perkins, you caused a breach of the token purchase agreement that made us liable for $10.8 million. Exactly. The contract, far from giving them benefits, is imposing burdens on them. They're trying to escape because they say you breached this separate agreement they had with you. That seems to me an entirely different scenario than the normal equitable estoppel case. Then let me try to say it this way. I think they are using the contract to try to impose a burden on Perkins. They are using the contract to say, Perkins, you had duties under this contract. You breached duties under this contract. They were important duties, and as a result of your breach of duties under this contract, we were damaged. They are burdening Perkins with the contract, saying you had important duties that were incorporated into the contract, and when you didn't perform them, we suffered the consequence. So it's like an indemnity claim almost. Indemnify us for the damages you caused by not performing your duties under the escrow. How is the trustee trying to get benefits from the contract? That's what I guess to me that's what's missing here, right? This is not the scenario in which they're trying to get all the goodies and escape the bad part of the contract. They're saying the whole contract is bad. It's bad for us. It's bad for you, and we're looking to you to make good on the losses we're going to suffer as a result of this contract, right? Well, the first thing I would say is that under the trustee's theory of the case, to decide whether Perkins Coie is liable, you first have to decide whether the seller is liable to the purchaser under the contract, because if the seller isn't liable to the purchaser under the contract, there's no liability for Perkins to make good. So to me, what they are doing is they are taking the contract, and they are saying fundamentally this is a dispute under the contract about whether you've rendered the purchaser liable to the seller, and if you have, we are going to impose the contractual duties on you and make you pay us for the damages you've caused. To me, using the contract as a sword against Perkins, saying you breached it, and now pay us the damages you caused, is seeking a benefit. It is using the contract as a sword against Perkins, saying you messed up under the contract, you didn't do your job under the contract, so pay us for the damages under the contract. The way I understand equitable estoppel is Perkins says, okay, I'm being hung by the contract, I'm entitled to defend myself or likewise avail myself of terms of the contract. Counsel, I have one unrelated question before your time runs out. Thank you. As I understand the docket from the district court, there is a global settlement conference scheduled for December 16th. If that is a correct understanding, and it may not be, but if that is a correct understanding, what is your position on whether we should just defer until we determine whether the parties can settle their differences? It's been rescheduled for January 16th, but, yes, there is a mediation scheduled with Benjamin Hurst, a bankruptcy judge from Montana, as mediator. What is your client's position on whether we should allow the mediation to run its course? We would not be adverse to that. Sometimes mediation is benefited by uncertainty. We would not be adverse to that. Okay. Thank you. You've used up your time, but we'll give you some time for a rebuttal. Let's hear from counsel for the trustee now. Thank you, Your Honors. Pamela Egan on behalf of Mark Waldron as the trustee. Counsel, you heard all the things I said to your opposing counsel, and I think I made it pretty clear to them that my view of whether this thing is moot or not depends on your answer to this question. Are you abandoning on the record any claims that may arise in any fashion out of the token purchase agreements? And if you say, yes, I'm abandoning them, I think this is moot. And if you say, no, I'm not, then that thing's still alive, and I think it's still here. Well, Your Honor, we are abandoning any claims under the what token agreements. Also, and this matter is moot, I think regardless of whether or not we take that position. I know you think that, but that's not what I think. That's why I asked you the question. All right. So you've answered it, right? Yes, I have, Your Honor. And I would like to take this opportunity to elaborate on this point. The first amended complaint replaces and supersedes the original complaint, and that reduces the original complaint to a nullity. It no longer performs any function in the case. And if an event occurs that prevents this court from being able to provide effective relief, then the matter is moot. And, you know, the Ninth Circuit's held in lacy that an amended complaint replaces and supersedes the previous complaint. It no longer performs any function. And as this court held in an unpublished decision called ExCeltus USA, it says, expressing our views on the claims in the original complaint that's been amended would be expressing views on abstract propositions of law. In other words, issuing the type of advisory opinion that the Supreme Court has long prohibited, citing Hall v. Beals, Supreme Court 396 U.S. 45-1969. So, counsel, as I understand it, your amended complaint deals with a Washington State statute on breach of trust and breach of fiduciary duty as a lawyer. Am I right about that? Yes, you are, Your Honor. Okay. So those are your remaining theories. That's right. Those are our claims based on the new evidence that we found. And I'd also appreciate your view of the question that I asked opposing counsel, which is whether if we were to conclude that the appeal is not moot, which I understand is counter to your argument, but if we were to conclude that the matter is not moot, whether we should defer a decision pending the mediation or settlement that is going to happen soon-ish. Well, we would prefer a ruling, Your Honor. We think that certainty would help our position. I think uncertainty might help Perkins' position, but it does not help our case. And so that's our position, Your Honor. And I'd like to address the implicit invitation of Perkins to collaterally attack the bankruptcy court order where my colleague argued that the court could not do anything, did not have the right to do anything to moot this appeal, that under the Federal Arbitration Act they did not have that right, and didn't even have the jurisdiction because this appeal was pending. That's a quintessential collateral attack that is not permissible. In fact, Black's Law Dictionary defines a collateral attack as an attack on an order outside of a direct appeal, especially one that attacks the jurisdiction of the court, which was the basis of their argument. And so I would ask this court, as it did in the Longere case, which Perkins submitted as a supplemental briefing, to uphold the interlocutory appellate regime, which occurs here. Of course, the order is interlocutory, the bankruptcy court order, and the way to contest the bankruptcy court order before this court directly bypassing the district court is through 28 U.S.C. 158 D.2. That's the method which has not been followed here. Or an interlocutory appeal could be brought through 28 U.S.C. 158 A.3 through the district court and then on to here. That has not been followed. And so just very briefly, bankruptcy court decision, Ninth Circuit, bankruptcy court issued third-party releases pursuant to a confirmation order. And creditors ignored it, saying, well, the bankruptcy court didn't have jurisdiction to do that, didn't have authority to do that. And this court held in Trulis v. Barton, 107 F.3.D. 685, 1995. The point is that only a direct attack is available, and collateral attack is unavailable. And that's the case here. The bankruptcy court order cannot be collaterally attacked. Well, it relates, though, to our court's jurisdiction, as you're trying to use it. I think it's a highly debatable point whether the bankruptcy court had the authority to do what it did here. What we said in that earlier case was that allowing the decision to go to the merits, to be litigated all the way to the merits until final judgment, wouldn't interfere with our court's jurisdiction because the merits of the underlying dispute are entirely separate from the arbitrability question. And here, that's not what's happening. The ruling that the bankruptcy court has issued is directly related to the arbitrability of the dispute before us, and that's what our court is trying to exercise jurisdiction over. So it seems to me, I don't know who's right on this, but it seems to me it's not as simple as what you've painted. Well, Your Honor, the argument that we won below, which is not before this court right now, because it's a collateral attack. But the argument that we made below is that there is a special appellate regime under the Federal Arbitration Act, which is that if arbitrability is ordered, if it's compelled, then there's no right of interlocutory appeal. But if it's denied, then there is a right of interlocutory appeal. That's the extent of the special appellate regime set forth in the Federal Arbitration Act. In order to – Except counsel, counsel, the appeal here is not moot unless the amended complaint is the operative complaint. So if we have – it seems to me that we would have to determine whether the amended complaint is the operative complaint first to determine whether the case is moot as a predicate, not necessarily a collateral attack, but as a predicate. And it's – I mean, just again speaking for myself, I don't really see a problem, because it seems to me that a plaintiff is always free to say, never mind, I now have a different claim. You don't have to go forward with a claim you don't want to go forward with. But I don't see why it isn't something we have to look at. Well, filing a motion to compel arbitration doesn't affect a stay of the underlying proceedings, and it doesn't fossilize the pleadings either. The trustee was – we were entitled to move forward with discovery. We moved forward with discovery. The court found – and this is issue preclusion, it was actually litigated – that we acted in good faith, that we found material and significant new facts after exercising significant diligence and effort, and that the new complaint is based on facts that Perkins withheld from the trustee in its disclosures. And issue preclusion applies to that. It was actually litigated. I don't think we're disagreeing. The only thing I'm asking about is your assertion that we can't consider the legitimacy of the filing of the amended complaint. I thought that's what you were arguing. Well, I think that that would be a collateral attack on the bankruptcy court. But then how can we determine – we're talking in circles around each other. I'm sorry. But this case, this appeal is moot only if the amended complaint supersedes the original complaint. So don't we have to first determine whether the amended complaint superseded the original complaint before determining whether the appeal is moot? Isn't that always the case that an amended complaint necessarily reduces the original complaint to a nullity? If it is legitimately filed, that is the question, I guess. Which then goes to whether or not the bankruptcy court order authorizing the filing of the first amended complaint was legitimate. Right, which is a predicate to your – potentially to the mootness question. And the legitimacy of the bankruptcy court order is not on appeal here. It's not on a direct appeal. That would have to go through 158D2 is our point. And I would like – and there's this implication that we're manipulating the appeal to try to evade an argument in which we didn't feel strongly. And that Perkins is collaterally stopped. Issue preclusion applies to interlocutory orders. And the court rejected those arguments. And just to close out the arguments, even though in our opinion this matter is moot, the first amended – the original complaint was not enforcing the Watt token sale agreements as Justice Watford's questions were alluding to. We were saying that Perkins promised Gigawatt Singapore, which is a – we've now learned is a paper facade. It was run by Russians, Andrei Kuzeni, who has since fled and he took the Fifth Amendment. He – Perkins promised Gigawatt Singapore that it would hold the Watt token sale proceeds in trust pending construction of cryptocurrency mining facilities by Gigawatt. And Gigawatt was, we thought, Gigawatt Singapore's partner and was absolutely central and in fact was the heart and soul of the entire Gigawatt project. So by promising to hold those Watt token proceeds in escrow and trust pending our construction, that was also a promise to Gigawatt. And Gigawatt Singapore did not agree to arbitrate with Perkins if it was unhappy with how Perkins handled the money. There was no arbitration agreement between Gigawatt Singapore and Perkins. And we were reaching Perkins through that partnership relationship with Gigawatt Singapore. We were not stepping into Gigawatt Singapore's shoes as a signatory to the Watt token purchase agreement. And in fact, if we were, Gigawatt Singapore did not agree to arbitrate disputes with Perkins and therefore there's no arbitration. And we're not stepping into the shoes of the creditors, the Watt token holders. We're stepping into the shoes of the debtors. And the court found, the bankruptcy court held, and this is in the record at SER 88, that the trustee was not enforcing contractual rights. It was not based on a contract. The trustee's claim was based on notions of trust, not contract. And that's not on appeal here, that finding. And so that too is issue of conclusion. And then just as a final point, a necessary element under the Federal Arbitration Act is that the relationship is commercial. And that has not been established here. Perkins has said in a district court case 2464 brought by the Watt token holders against Perkins, which has since been stayed and also enjoined, that they brought a Consumer Practices Act claim. And they said that this was commercial. And Perkins denied that. And that's in the record at SER 125 and 102. I have nothing further, Your Honors. Okay, thank you very much for your argument. Let's give you two minutes for rebuttal, please. Thank you, Your Honor. I would agree that the amended complaint may supersede the original complaint for purposes of litigating the merits in the bankruptcy court. I don't see how the amended complaint can supersede the original complaint for purposes of this appeal. Because if it does, the right to appeal under the Federal Arbitration Act is conditional and essentially meaningless. And I think this is what the Britain case holds at 916 Fed Second at page 1411 and 1412. They say, we held the district court lacked jurisdiction to enter an amended judgment while the appeal of the original judgment was pending. The modified order reflected a change in the result of the very issue on appeal. If allowed to stand, the appellate court would be dealing with a moving target. And that's what's going on here. We've spent two years moving this appeal up to this court. And after it's fully briefed and at the last minute, the plaintiff goes, oh, well, it's moot because we've amended. If that's the result that the original claims. What would be arbitrated? You've just said that for purposes of the bankruptcy court, the amended complaint has superseded it. So if we said, well, if we were under the old complaint, you would have gotten to arbitrate it. But now you're not. The way I understand it in the Britain case, if you — That was the same claim, though. Here there's a new, different claim. In the Britain court case, the way I read it, what they ruled was that they were vacating the judgment if arbitration was granted. So if you compelled our — But that was the same claim. Here it is not the same claim. And that seems to me very important because a person can decide not to pursue a claim, and then you can't make them arbitrate the claim they don't want to have. I mean, let's say this has happened very quickly. You demanded arbitration and they immediately said, well, we've just discovered new facts, never mind. You can't make them arbitrate a claim they don't want to bring, it seems to me. I think they could go to the arbitral panel and say, we don't want to bring that claim anymore and we want to dismiss it. But if arbitration should have been granted, then what should have happened is all of the authority to deal with the merits of the case should have passed to the arbitral panel. The litigation should have been stayed. If we were entitled to arbitration at the time we demanded it, then I think what should have happened is none of this amendment, nothing on the merits that happened in the bankruptcy court will be given effect in the arbitration because what should have happened is authority to resolve the merits of the case should have passed to the arbitral panel. And the plaintiff can go to the arbitral panel and they can say whatever they want. They can say, we want to abandon this. They can say, we don't want to abandon it, we want to amend it. They can do all that. And we want to amend it to something that doesn't call for arbitration, so send us back to court. They could do that. So why go through all that when that's the result that has to happen? Because federal law favors arbitration, and if you don't compel arbitration when arbitration is appropriate, then it's an endless moving target. There's a statutory scheme where if you're entitled to arbitration, the litigation is stayed and you go to an alternate forum. You go to the arbitration panel. And in front of the arbitration panel, the plaintiff can non-suit her claims and say, I want to dismiss those with prejudice. And she can then come back to the bankruptcy court and say, I mean, that won't take very long if that's what she wants to do. I'm going to dismiss all of my original claims founded on the token purchase agreement. She can come back to the bankruptcy court and argue, I have additional claims that were not subject to arbitration and I want to litigate them. I agree she can do that. But if we were entitled to arbitration, then arbitration should have been granted and the procedure set forth in the statute should have been followed. Thank you. Very good. Thank you both for your arguments. The case just argued is submitted.
judges: GRABER, WATFORD, UNKNOWN